Argued March 15, affirmed June 1, reconsideration denied July 14, petition
for review allowed September 14, 1976
See 277 Or 493, 561 P2d 588

STATE OF OREGON, *Appellant,*

*v.*

RICHARD M. MOZOROSKY, *Respondent.*

(No. C 75-03-0846 Cr, CA 4676)

(No. C 74-09-2828 Cr, CA 4905)

(No. C 74-09-2826 Cr, CA 4906)

(No. C 74-09-2825 Cr, CA 4907)

(No. C 74-09-2824 Cr, CA 4908)

(No. C 74-09-2823 Cr, CA 4909)

549 P2d 1303

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Foley and Lee, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Defendant was indicted for theft in the first degree, ORS 164.055, in eight separate indictments. A jury returned verdicts of not guilty on two indictments, but did not agree on verdicts on the other six. Subsequently, defendant moved for an order dismissing the six indictments on the grounds of collateral estoppel, res judicata and former jeopardy. Orders by two different judges resulted in the dismissal of all of them. The state appeals from the dismissal of five of those six indictments.

Following defendant's trial, the state obtained a ninth indictment charging theft which defendant also moved to dismiss on the basis of former jeopardy. The state appeals from the circuit court's allowance of that motion.

The state contends that the five original indictments at issue here charge different thefts than the indictments on which defendant was acquitted. It contends that there are material issues involved in those indictments which were not decided by the verdicts of acquittal. The state also contends that the defendant was not formerly in jeopardy on the offense charged in the ninth indictment because that charge was not part of the same criminal episode.

All nine indictments were identical in form except for the time periods involved. They read as follows:

"The said defendant, between [date] and [date] in the County of Multnomah, State of Oregon, did unlawfully and knowingly commit theft of lawful money of the United States of America, of the total value of more than Two Hundred Dollars, the property of Lovejoy Specialty Hospital, Inc., a corporation, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Before trial, the state moved to consolidate the original eight indictments. *See, State v. Bishop,* 16 Or App 310, 314, 518 P2d 177 (1974). Defendant did not object, and the circuit court granted the motion.

At trial, the state's theory was that the defendant, an employe of the hospital, had committed what amounted to common-law embezzlement in a variety of ways. The state contended that the defendant developed an elaborate, and confusing, system to bilk the hospital of thousands of dollars. This system allegedly operated in the following manners:

Therapeutic abortions are performed at the hospital. Japanese seaweed, or Laminaria, is used to perform the abortions. At one time, there was some difficulty in obtaining Laminaria from the hospital's regular suppliers. The state contended that defendant exaggerated this shortage and led members of the board of directors to believe a crisis existed. Defendant then told various colleagues that he had been approached by one J. L. Kernin who could produce a ready supply of Laminaria.

The Kernin connection allegedly provided a basis for defendant to juggle funds. Each day the hospital business manager made out deposit slips, subtotaling check receipts and cash receipts, and gave the receipts to defendant for deposit. Defendant would then draw a check to J. L. Kernin on the hospital account, or he would tell someone authorized to write checks that the hospital needed more Laminaria and thereby inveigle that person into writing a hospital check to Kernin. According to the state, defendant would then endorse Kernin's name on the check, place it with the others for deposit, take out an equal amount of cash, alter the subtotals to reflect the decrease in cash and increase in checks, and then make the deposit. Defendant kept the cash. The business manager received a receipt showing only the total deposit, which remained unchanged.

The state also tried to show an intricate stratagem involving the payment of defendant's American Express Co. bill with hospital funds. Defendant supposedly wrote or had others write checks to "American" on a regular basis. They were entered in the hospital's check journal as payments to American Hospi-

tal Supply, and this created the impression that a routine payment was being made. The checks allegedly were forwarded to the American Express Co. and were credited to defendant's account.

The state also contended that money orders, which defendant purchased at a drugstore with hospital funds, were retained by him. Furthermore, according to the state, checks payable to one Settlemeier and one Brewer were not cashed by them, but, rather, were cashed by defendant, who kept the funds.

Finally, the state argued that its evidence showed that defendant had a safe and a burglar alarm system installed in his mother's home and paid for it with hospital funds which were not authorized for such expenditures. Payments were made by checks drawn on the hospital's account.

Only in its closing argument to the jury did the state attempt to link specific checks to individual indictments. The state said in its jury argument that the different time periods in the indictments were intended to correspond to periods between the dates the checks were made and the dates on which they were deposited at the drawee-bank. The prosecutor told the jurors that the first indictment related to the safe, the second related to the burglar alarm system, and the remaining indictments related to six specific Kernin checks and were part of the alleged Laminaria hoax.

We hold that the judgment of acquittal on the first two indictments estops the state from retrying the defendant on the other five original indictments. The doctrine of collateral estoppel applies in criminal cases as a component of the ban against double jeopardy.[1] The Oregon Supreme Court has stated the rule of collateral estoppel:

"* * * [A] judgment of a court of competent jurisdic-

---

[1] U.S. Const. Amend. V; Oregon Constitution, Art I, § 12; ORS 131.515(1).

tion, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties * * *." *State of Oregon v. Dewey,* 206 Or 496, 505, 292 P2d 799 (1956), quoting from *Russell v. Place,* 94 US 606, 24 L Ed 214 (1876).

Here the court had jurisdiction, and the parties are obviously the same. Assuming *arguendo* that each indictment covers a different crime, each is the functional equivalent of "another suit."[2] The issue, then, is whether the same questions will be litigated in another trial on the five indictments as were litigated with regard to the two indictments which resulted in acquittals.

*State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975), prescribes the procedure for determining when material issues are actually or necessarily adjudicated in a prior action:

" 'The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.' (Footnotes omitted.)" (Quoting from *Ashe v. Swenson,* 397 US 436, 444, 90 S Ct 1189, 25 L Ed 2d 469 (1970)."

---

[2] It has not been argued on appeal that defendant's alleged actions constitute less than eight crimes. E.g., *State v. Jackson,* 23 Or App 246, 541 P2d 1072 (1975); *State v. Welch,* 264 Or 388, 505 P2d 910 (1973).

■ We have examined the record. As we noted, the only variance in the indictments was the time period. In instructing the jury, the court did not relate specific checks to each of the individual indictments as the prosecutor did in closing. After reading the indictments, the court recited the theft statute and defined the elements of theft. The court then continued:

"* * * [T]he elements that must be proved by the State beyond a reasonable doubt are the same in each one of these cases; they are the same in all eight, with this single exception: *the dates upon which the theft is alleged to have occurred are different in each indictment.* So, in each indictment here, taking each one individually, the State would be required to prove that the defendant did commit theft of more than two hundred dollars; that the crime, if it took place, did take place between those dates recited in each particular indictment; and that, of course, the crime, if it did occur, occurred in Multnomah County, Oregon.

"I hope I have made that clear because I don't want to go through all eight of them again and I am sure you don't want me to, either. *The only difference is in the dates.* To find this man guilty in any one of these cases, you must find that he committed theft of more than two hundred dollars; that it took place in Multnomah County; then you would have to go through each one and see whether or not it took place between the dates stated in the indictment." (Emphasis supplied.)

Our review of the evidence indicates that the burglar-alarm check, five Kernin checks, two "American" checks, two money-order checks, two Brewer checks and one Settlemeier check were all written within the time period of the first indictment. The safe check, one Kernin check, one "American" check and one money-order check were written within the time period of the second indictment. In other words, the state introduced evidence that *all* of the theft schemes allegedly perpetrated by the defendant occurred in whole or in part during one or both of the time periods covered by the indictments on which the defendant was acquitted. In fact, the evidence showed that the

alarm- and burglar-system transactions, thefts by the state's theory, took place *only* during the times for which defendant was acquitted, i.e., more alleged theft schemes occurred then than during the other time periods.

In his jury argument the prosecutor attempted to relate each separate indictment to a separate check to prove distinct acts of theft. This view of the case was not binding on the jurors. The scope of their deliberation was controlled by the indictments, the evidence and the court's instructions. Although instructions could have been given in accordance with the prosecutor's position, again assuming that the indictments charged separate crimes, they were not. The court simply instructed that to find the defendant guilty, the jurors would have to find that the defendant committed theft, and then they would have to go through each indictment to determine whether the theft took place between the dates stated therein. The jury in effect decided that no criminal activities in pursuance of the crime of theft occurred between the dates set forth in the charges of which the defendant was acquitted. Since the evidence of theft in support of the remaining five charges was evidence of the same ongoing schemes, and included evidence of no additional schemes, we fail to see any different material issues to be decided in a retrial of the original five indictments. The state was correctly barred from proceeding on those charges.

For the reasons stated above, collateral estoppel also bars the state from proceeding on the ninth indictment. The state says it plans to prove the "American" scheme in a trial on that indictment, but that issue has already been litigated. In fact, the check from which the time period for the ninth indictment was determined was admitted as evidence in the first trial.

Affirmed.