Argued November 2, 1976, reversed March 17, 1977

STATE OF OREGON, *Petitioner,*
*v.*
RICHARD M. MOZOROSKY, *Respondent.*
(CA 4905, SC 24686)
561 P2d 588

John W. Burgess, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Denecke, Chief Justice, and McAllister,** O'Connell,*** Tongue, Howell and Bryson, Justices.

DENECKE, C. J.

**McAllister, J., retired December 31, 1976.
***O'Connell, J., term expired January 3, 1977.

**DENECKE, C. J.**

We granted the petition for review in this case because of the perplexing questions concerning the application of the doctrine of collateral estoppel.

The defendant was charged with theft (formerly embezzlement) from his employer. He was charged in eight indictments which were identical except each covered a different period of time. With defendant's approval the indictments were consolidated for trial. The jury acquitted the defendant on two indictments, was unable to agree on the remaining six, and, therefore, was discharged. The defendant moved for dismissal of the remaining six on the grounds of double jeopardy, res judicata and collateral estoppel. The motion was granted, the state appealed and the Court of Appeals affirmed. 25 Or App 499, 549 P2d 1303 (1976).

Allegedly the defendant used several schemes to defraud his employer. The defendant was authorized to be one of the two necessary signators on his employer's checks. He was allegedly able to bilk his employer by one method because defendant made his employer's bank deposits of checks and cash. Defendant would remove the cash for his personal use and substitute a check, in the amount of the cash, signed by himself and another authorized signator. The check would be payable to J. L. Kernin and was supposedly to pay for a drug which could not be obtained through regular channels. The defendant would endorse the checks as J. L. Kernin and include it in the deposits. For this reason the hospital received a deposit slip in the proper amount.

The state introduced 39 checks of the hospital payable to J. L. Kernin. They were dated during, before and after the time periods stated in the eight indictments.

Another alleged scheme was that the defendant had two checks made payable to an alarm company and an

office supplier which he used to pay for personal purchases from those concerns.

The state introduced a check to Action Alarm Co. dated December 4, 1973, and endorsed December 31, 1973, and one to D. C. Wax Office Equipment, dated February 4, 1974, and endorsed April 5, 1974. These dates correspond to the periods specified in two of the indictments, the two on which the jury returned not guilty verdicts.

The state introduced other checks which allegedly were used by the defendant in stealing money from his employer by other schemes. Some of these covered part of the periods in the two indictments in which not-guilty verdicts were returned and some for periods covered in the other indictments.

Not until its final argument did the state attempt to link specific checks to individual indictments. At that time the state stated "that the different time periods in the indictments were intended to correspond to periods between the dates the checks were made and the dates on which they were deposited." 25 Or App at 503.

The state argued in its final argument to the jury that the check to D. C. Wax, which was dated February 4, 1974, and deposited April 5, 1974, and which was for the purchase of a safe, was the subject of the first indictment. The first indictment stated that the theft took place between February 4, 1974, and April 5, 1974.

The state also argued to the jury that the check to Action Alarm, which was dated December 4, 1973, and deposited December 31, 1973, was for the purchase of a burglar alarm and was the subject of the second indictment. The second indictment stated the theft took place between December 4, 1973, and December 31, 1973.

The state further argued that six of the checks

payable to J. L. Kernin, ostensibly in payment for drugs, were the subject of the remaining six indictments. The dates of each of those six checks and the dates deposited encompassed the periods set forth in each of the remaining six indictments.

As stated, the jury acquitted on the first two indictments and was unable to agree on the remaining six.

The trial court did not instruct the jury to attempt to relate specific checks to specific indictments. After stating the elements of the crime the court stated:

"* * * [T]he elements that must be proved by the State beyond a reasonable doubt are the same in each one of these cases; they are the same in all eight, with this single exception: the dates upon which the theft is alleged to have occurred are different in each indictment. So, in each indictment here, taking each one individually, the State would be required to prove that the defendant did commit theft of more than two hundred dollars; that the crime, if it took place, did take place between those dates recited in each particular indictment; and that, of course, the crime, if it did occur, occurred in Multnomah County, Oregon."

The defendant, apparently, is relying both on Art I, § 12, of the Oregon Constitution and the Fifth Amendment to the Federal Constitution. Because we are holding that defendant's rights were not violated, we must necessarily decide the case on the basis of the part of the Fifth Amendment protecting against double jeopardy.

■■ The Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." One aspect of this protection is that no person shall be prosecuted twice for the same offense. An example of the protection afforded by this aspect of the amendment is that the defendant in this case could not be retried for the crime charged in the first indictment because he has already been tried on that indictment and found not guilty. That aspect of double jeopardy also prohibits

multiple prosecutions (for different crimes) based upon the same evidence. *State v. McDonald,* 231 Or 48, 52, 365 P2d 494, cert den 370 US 903, 82 S Ct 1247, 8 L Ed2d 399 (1962).

The Court of Appeals in this case stated there was another aspect of double jeopardy: "The doctrine of collateral estoppel applies in criminal cases as a component of the ban against double jeopardy." 25 Or App at 499. Neither this court nor the Court of Appeals has previously held that collateral estoppel was involved either in the federal or state ban against double jeopardy. Cf. *State v. Dewey,* 206 Or 496, 292 P2d 799 (1956); and *State v. George,* 253 Or 458, 466, 455 P2d 609 (1969); *State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975). However, in 1970 the United States Supreme Court decided that the doctrine of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson,* 397 US 436, 445, 90 S Ct 1189, 25 L Ed2d 469 (1970). The Court further held the doctrine of collateral estoppel was applicable to state prosecutions.

The Court of Appeals also correctly set out the test required by *Ashe v. Swenson, supra* (397 US 436), to decide if the rule of collateral estoppel applies:

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 US 575, 579, 92 L Ed 180, 184, 68 S Ct 237. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of

collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." 397 US at 443-444.

■■ The crux of the test is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The issue in this case is whether the jury could have found the defendant not guilty of theft between February 4, 1974 and April 5, 1974, and between December 4, 1973, and December 31, 1973, upon any basis other than that defendant also did not steal from his employer during the periods covered by any of the other indictments.

The Court of Appeals reasoned:

"* * * The jury in effect decided that no criminal activities in pursuance of the crime of theft occurred between the dates set forth in the charges of which the defendant was acquitted. Since the evidence of theft in support of the remaining five charges was evidence of the same ongoing schemes, and included evidence of no additional schemes, we fail to see any different material issues to be decided in a retrial of the original five indictments. * * *." 25 Or App at 506.

We disagree with the reasoning of the Court of Appeals.

■ As a commentator noted: "The test as expressed by the majority [in *Ashe v. Swenson*], though requiring an examination of the materials involved in the prior trial, required the court to determine only that the previous jury could have based its decision on an issue other than that sought to be barred, rather than requiring a determination of what issues were actually decided." 50 B U L Rev 604, 615 (1970).

In our opinion the jury, in finding the defendant not guilty of the charges made in the first two indictments, could have found only that the defendant did not commit theft in paying for the safe and burglar alarm with his employer's checks. The trial court did not instruct the jury that it was to determine the

defendant's innocence or guilt on the first two indictments by determining whether he was unauthorized to use his employer's checks to pay for purchases of the safe and burglar alarm for his private use. However, the trial court did not foreclose the jury from reaching its verdict on that basis.

The circumstances in this case are unique and give us more insight into the probable rationale of the jury's decisions than a court will usually have. Because these eight indictments were all tried together, we know that the jury, if it acted rationally, must have grounded its verdict on the first two indictments on a different basis than that which it used in attempting to reach a verdict on the other six indictments. It found the defendant not guilty of the first two and could not agree on the other six.

The Court of Appeals is correct that checks to J. L. Kernin dated and deposited during the period covered by the first two indictments were in evidence and, therefore, the jury could have found that the defendant did not commit theft by preparing any of these checks to Kernin, including those checks for period covered by the remaining six indictments. But the test prescribed by *Ashe v. Swenson, supra* (397 US 436), is, could the jury have found on some basis other than that defendant did not commit theft during any of the periods specified in all of the indictments? We believe it is clear it could have.

We are of the opinion that we are not putting a restrictive interpretation on *Ashe v. Swenson, supra* (397 US 436). We conclude that the jury in this case, acting rationally, could have acquitted the defendant on the charges made in the first two indictments "upon an issue other than that which the defendant seeks to foreclose from consideration"; that is, thefts during the periods covered by the last six indictments.

The Court of Appeals erred in affirming the dismissal of the remaining six indictments.

[ 500 ]

For the same reasons already stated, we hold the Court of Appeals also erred in affirming an order dismissing a ninth indictment upon the same ground.

Reversed.