SUPREME COURT OF GEORGIA

November 2, 2022

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

Upon consideration, the Court has revised the deadline for motions for reconsideration in this matter. It is ordered that a motion for reconsideration, if any, including motions submitted via the Court's electronic filing system, must be **received in the Clerk's Office by 2 p.m. on Wednesday, November 9, 2022**.

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk

NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: November 2, 2022

S22A0605. McELRATH v. THE STATE.

BETHEL, Justice.

This is the second appearance of Damien McElrath's case before this Court. In 2017, a jury found McElrath guilty but mentally ill as to felony murder but not guilty by reason of insanity as to malice murder following a single, continuous encounter between McElrath and his mother, Diane McElrath. The trial court did not recognize the verdicts as repugnant and accepted them. On appeal, we held that the verdicts were repugnant, and thus we vacated the verdicts and remanded McElrath's case for retrial. See *McElrath v. State*, 308 Ga. 104 (839 SE2d 573) (2020). On remand, McElrath filed a plea in bar, alleging that retrial was precluded on double jeopardy grounds, and the trial court denied this motion.

In this appeal, McElrath argues that this Court should have

reversed rather than vacated his felony murder conviction in his previous appeal. He also challenges the trial court's ruling on his plea in bar, contending that retrial on all of the counts is barred because the jury previously found him not guilty by reason of insanity on the malice murder count. As we discuss below, however, both of these arguments fail. We therefore affirm the trial court's denial of McElrath's plea in bar.

1. McElrath first argues that this Court erred in his prior appeal when we determined that the jury's verdicts should be vacated because they were repugnant. See *McElrath*, 308 Ga. at 108-112 (2). McElrath argues that, instead, our Court should have allowed the jury's verdict of not guilty by reason of insanity on the malice murder count to stand and should have reversed the guilty but mentally ill verdict on the felony murder count (and the underlying aggravated assault on which it was predicated). However, this issue has already been conclusively decided in McElrath's earlier appeal before this Court, where we determined that the jury's verdicts on the malice murder and felony murder

2

counts were repugnant because they could not logically or legally exist simultaneously. This was

> because the not guilty by reason of insanity verdict on malice murder and the guilty but mentally ill verdict on felony murder based on aggravated assault required affirmative findings of different mental states that could not exist at the same time during the commission of those crimes as they were indicted, proved, and charged to the jury.

Id. at 112 (2) (c).

Put simply, we determined, based on the evidence presented at trial, that it was not legally possible for McElrath to simultaneously be both sane (guilty but mentally ill) and insane (not guilty by reason of insanity) during the single episode of stabbing his mother. See id. Thus, we determined that the purported verdicts returned by the jury were a nullity and should not have been accepted by the trial court. See id. See also 89 C.J.S. Trial § 1156 (2022) (stating that when findings in special verdicts "are utterly and irreconcilably inconsistent with, or repugnant to, each other, they neutralize, nullify, or destroy each other"). Accordingly, we vacated both the guilty but mentally ill and the not guilty by reason of insanity

3

verdicts as to the malice murder and felony murder charges, respectively, and remanded the case for a new trial. See *McElrath*, 308 Ga. at 112 (2) (c).

Our decision in McElrath's prior appeal is law of the case. "Under the 'law of the case' rule, 'any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be.'" *Langlands v. State*, 282 Ga. 103, 104 (2) (646 SE2d 253) (2007) (quoting OCGA § 9-11-60 (h)). "It is well-established that the law of the case doctrine applies to holdings by appellate courts in criminal cases." *Hollmon v. State*, 305 Ga. 90, 90-91 (1) (823 SE2d 771) (2019). Therefore, the questions of whether McElrath's conviction for felony murder should have been reversed rather than vacated and the not guilty verdict allowed to stand have already been decided in this case by this Court, and our decision was binding on the trial court when it considered McElrath's plea in bar upon remand. See *Love v. Fulton County Board of Tax Assessors*, 311 Ga. 682, 693 (3) (a) (859 SE2d 33) (2021)

4

(noting that an earlier appellate decision became the law of the case and bound the trial court in its consideration of the case upon remand). See also *Hollman*, 305 Ga. at 91 (1); *Hicks v. McGee*, 289 Ga. 573, 578 (2) (713 SE2d 841) (2011) ("Georgia's appellate courts are required to adhere to the law of the case rule in all matters which they consider. . . . [A]ppellate rulings remain binding as between parties to a case, so long as the evidentiary posture of the case remains unchanged, despite all contentions that prior rulings in the matter are erroneous." (citation omitted)).

Based on the foregoing, it is clear that this appeal is not a proper vehicle for challenging this Court's earlier decision in this case that the repugnant verdicts reached by the jury in McElrath's trial must be vacated. Under our Court's rules, McElrath could have filed a motion for reconsideration contesting that decision during the reconsideration period for the prior appeal, see Supreme Court Rule 27, but he did not do so. Accordingly, we do not reconsider here our earlier ruling that the jury's repugnant verdicts must be vacated.

2. McElrath next argues that because the jury found him not

guilty by reason of insanity on the malice murder count, he cannot be retried on any of the counts in the indictment because of the constitutional prohibition against double jeopardy and the doctrine of collateral estoppel. We disagree.

The Fifth Amendment to the United States Constitution guarantees criminal defendants protection against double jeopardy. See U. S. Const. Amend. V. Likewise, the Georgia Constitution provides that "[n]o person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial." Ga. Const., Art. I, Sec. I, Par. XVIII. The doctrine of double jeopardy encompasses both "procedural" and "substantive" aspects, the former barring multiple *prosecutions* for crimes arising from the same conduct, and the latter barring multiple *punishments* for such crimes. See *Williams v. State*, 307 Ga. 778, 779 (1) (838 SE2d 235) (2020). As the United States Supreme Court and this Court have previously noted, a fundamental principle of procedural double jeopardy is that a "verdict of acquittal is an absolute bar to a subsequent prosecution

6

for the same offense." *Williams v. State*, 288 Ga. 7, 8 (2) (700 SE2d 564) (2010) (citing *Green v. United States*, 255 U. S. 184, 188 (78 SCt 221, 2 LE2d 199) (1957)). See also *Bullington v. Missouri*, 451 U. S. 430, 445 (IV) (101 SCt 1852, 68 LE2d 270) (1981); *Burks v. United States*, 437 U. S. 1, 16 (III) (98 SCt 2141, 57 LE2d 1) (1978) (noting that "we necessarily afford absolute finality to a jury's verdict of acquittal").

The bar against double jeopardy also encompasses the doctrine of collateral estoppel, which precludes the re-litigation of an ultimate fact issue that was determined by a valid and final judgment. See *Giddens v. State*, 299 Ga. 109, 112-113 (2) (a) (786 SE2d 659) (2016).[1] As the United States Supreme Court has explained,

'[c]ollateral estoppel' is an awkward phrase, but it stands

---

[1] "Under this doctrine, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Citation and punctuation omitted.) *Giddens*, 299 Ga. at 112-113 (2) (a). Collateral estoppel therefore precludes "retrial of the factual decisions that necessarily underlie the legal determination of acquittal." (Citation omitted.) Id. at 113 (2) (a). To assert this protection in a subsequent trial, the defendant bears the burden of proving from the record what facts were actually and necessarily decided in his favor in an earlier trial. See *Giddens*, 299 Ga. at 113 (2) (a).

for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined *by a valid and final judgment*, that issue cannot again be litigated between the same parties in any future lawsuit.

(Emphasis supplied.) *Ashe v. Swenson*, 397 U. S. 436, 443 (90 SCt 1189, 25 LE2d 469) (1970). See also *Roesser v. State*, 294 Ga. 295, 296 (751 SE2d 297) (2013) ("When there is 'a critical issue of ultimate fact in all of the charges against [the defendant], a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element.'" (quoting *Yeager v. United States*, 557 U. S. 110, 123 (129 SCt 2360, 174 LE2d 78) (2009)).

Based on these principles, McElrath argues that the jury's verdict of not guilty by reason of insanity as to the malice murder charge bars retrial as to that charge, as well as the other charges in the indictment. Under the general principles of double jeopardy and viewed in isolation, the jury's purported verdict of not guilty by reason of insanity would appear to be an acquittal that precludes retrial, as not guilty verdicts are generally inviolate. See *Yeager*, 557

8

U. S. at 122 (II) ("Even if the verdict is based upon an egregiously erroneous foundation, its finality is unassailable." (citation and punctuation omitted)); *Richardson v. United States*, 468 U. S. 317, 325 (104 SCt 3081, 82 LE2d 242) (1984) ("[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy[.]"). Viewed in context alongside the verdict of guilty but mentally ill, however, the purported acquittal loses considerable steam. Because the verdicts were repugnant, both are rendered valueless. There is no way to decipher what factual finding or determination they represent, and McElrath cannot be said with any confidence to have been found not guilty based on insanity any more than it can be said that the jury made a finding of sanity and guilt with regard to the same conduct. See *McElrath*, 308 Ga. at 111 (2) (c) ("Where a jury renders repugnant verdicts, both verdicts must be vacated and a new trial ordered for the same reasons applicable to mutually exclusive verdicts." (citing *Dumas v. State*, 266 Ga. 797 (471 SE2d 508) (1996)). Thus, the repugnant verdicts failed to result

9

in an event that terminated jeopardy, akin to a situation in which a mistrial is declared after a jury is unable to reach a verdict. Cf. *Richardson*, 468 U. S. at 325-326 (holding that a re-trial following a hung jury generally does not violate the Double Jeopardy Clause because the jury's failure to reach a verdict does not terminate the original jeopardy). Accordingly, the general principles of double jeopardy do not bar McElrath's retrial on the malice murder charge.

But that does not end our analysis. McElrath has further argued that the doctrine of collateral estoppel, which is encompassed by the prohibition against double jeopardy, would also bar retrial. We disagree.

As detailed in Division 1 above, the verdicts returned by the jury were repugnant, and "any judgment and sentence entered on repugnant verdicts are void." See *State v. Owens*, 312 Ga. 212, 216 (1) (a) (862 SE2d 125) (2021) ("In considering whether verdicts were repugnant and thus void, we have held that no *valid judgment* may be entered on a void verdict. (emphasis supplied; citations and punctuation omitted)). Simply stated, a repugnant verdict of the sort

10

rendered in McElrath's first trial is no verdict at all because it did not "represent a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U. S. 564, 571 (II) (97 SCt 1349, 51 LE2d 642) (1977). And collateral estoppel only applies once there has been a valid and final judgment. See *Ashe*, 397 U. S. at 443 (noting that a "valid and final judgment" is required before collateral estoppel bars retrial).

Moreover, while it is true that collateral estoppel "may completely bar a subsequent prosecution where one of the facts necessarily determined in the former proceeding is an essential element of the conviction sought," *Malloy v. State*, 293 Ga. 350, 354 (2) (a) (744 SE2d 778) (2013), this case does not call for a straightforward application of the collateral estoppel rule.

McElrath argues that the issue of his insanity at the time he stabbed Diane to death was an issue the jury actually and necessarily decided in his favor when it found him not guilty by reason of insanity on the malice murder count. However, the jury

11

spoke through both an acquittal by reason of insanity and convictions of guilty but mentally ill – finding McElrath both insane and sane at the time of the stabbing. See *McElrath*, 308 Ga. 112 (2) (c). "The whole collateral estoppel analysis is premised on the proposition that the jury acted rationally and lawfully." *Giddens*, 299 Ga. at 118. Where it did not, as here, the Court cannot infer facts, such as the defendant's sanity (or lack thereof), that must have been decided in order for the jury to return the verdicts it reached. Cf. id. ("The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel – which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict – are no longer useful." (citation omitted)). Because it cannot be said with any confidence that the jury made a finding of innocence based on insanity any more than it can be said that it made a finding of sanity and guilt, the doctrine of collateral estoppel does not bar retrial.

Accordingly, neither the doctrine of collateral estoppel nor the more general principles of double jeopardy bar McElrath from being

retried as to all counts of the indictment. These claims for relief therefore fail.

*Judgment affirmed. All the Justices concur.*

PINSON, Justice, concurring.

I concur in the Court's opinion, but with reservations.

"[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence.'" *Green v. United States*, 355 U.S. 184, 188 (78 SCt 221, 2 LEd2d 199) (1957) (quoting *Ball v. United States*, 163 U.S. 662, 671 (16 SCt 1192, 41 LEd 300) (1896)). And the United States Supreme Court has explained that the finality of a verdict of acquittal holds "even though the acquittal was based upon an egregiously erroneous foundation," *Arizona v. Washington*, 434 U.S. 497, 503 (II) (98 SCt 824, 54 LE2d 717) (1978) (cleaned up), and even "when a jury returns inconsistent verdicts, convicting on one count and acquitting on another count, where both counts turn on the very same issue of ultimate fact[.]" *Bravo-Fernandez v. United States*, 580 U.S. 5, 8 (137 SCt 352, 196 LEd2d 242) (2016) (explaining that, in such circumstances, "[t]he Government is barred by the Double Jeopardy Clause from challenging the acquittal").

14

The Court nonetheless concludes here that the State may seek to retry McElrath on a count for which the jury returned an acquittal verdict. I follow the logic: as a matter of Georgia law, the acquittal was a "repugnant" verdict; a repugnant verdict is "void," which means that, unlike other merely "erroneous" verdicts, it is not a verdict at all; and so the jury never reached a verdict that ended the defendant's jeopardy. Further, precedent supports the general idea that a "void" acquittal is "no bar to subsequent indictment and trial." *Ball*, 163 U.S. at 669 (making this point with respect to "[a]n acquittal before a court having no jurisdiction," which "is, of course, like all the proceedings in the case, absolutely void"). See also *United States v. Slape*, 44 F4th 356, 361-62 (5th Cir. 2022) ("[T]he mere *appearance* of a successive prosecution—and even the erroneous *conviction* or *acquittal* of a defendant in certain invalid proceedings—does not suffice for the attachment of jeopardy where a 'fatal defect' in a criminal prosecution renders the proceedings 'void.'" (quoting *Ball*, 163 U.S. at 669)). And the Court's analogy to a retrial following a "hung jury" makes some sense. See *Richardson v.*

15

*United States*, 468 U.S. 317, 324, 325 (104 SCt 3081, 82 LE2d 242) (1984) (reaffirming that "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause" because "the failure of the jury to reach a verdict is not an event which terminates jeopardy").

And yet, I can't quite shake the doubt that these points can reconcile the Court's decision fully with the quite-absolute-sounding bar against retrying a defendant who has secured an acquittal verdict. See, e.g., *Bullington v. Missouri*, 451 U.S. 430, 445 (IV) (101 SCt 1852, 68 LEd2d 270) (1981) ("A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final."); *Arizona v. Washington*, 434 U.S. at 503 (II) ("The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal."). This case is not quite like the cases where the verdict was void because the court lacked jurisdiction from the outset, because jeopardy did actually attach here. Nor is it quite like the hung-jury cases, because the jury here did actually reach a verdict. So the Court's conclusion here that jeopardy did not end— and so McElrath can be retried—depends on a state-law-based legal

16

fiction that treats the jury's verdict as though it never happened. To be sure, the law can and must depend on legal fictions all the time. But this one bears a lot of weight, and I am not confident that it carries the Court's decision over the absolute bar against retrying a defendant after an acquittal verdict. Indeed, the Attorney General "acknowledges that retrial of [McElrath's] malice murder charge would be precluded by double jeopardy under the law as it currently stands."

This lingering doubt is not enough to justify dissenting from an otherwise unanimous Court, so I concur in the Court's opinion. But consider me *dubitante*.

I am authorized to state that Justice McMillian joins in this concurrence.