156 January 16, 2025 No. 1

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

DARRON DUANE DODGE,
*Petitioner on Review.*
(CC CR1301852) (CA A174232) (SC S069859)

On review from the Court of Appeals.*

Argued and submitted May 16, 2023.

Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Doug Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, James, and Masih, Justices.**

DUNCAN, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

Bushong, J., concurred and filed an opinion.

_____

\* Appeal from Clackamas County Circuit Court, Susie L. Norby, Judge. 321 Or App 775 (2022) (nonprecedential memorandum opinion).

\*\* Baldwin, Senior Judge, Justice pro tempore, participated in oral argument, but did not participate in the consideration or decision of this case.

**DUNCAN, J.**

This case involves two trials and defendant's claim that the second trial violated his state and federal constitutional rights against double jeopardy. Or Const, Art I, § 12; US Const, Amend V. [1] The Court of Appeals resolved the case on preservation grounds. *State v. Dodge*, 321 Or App 775, 776-77 (2022) (nonprecedential memorandum opinion). For the reasons explained below, we reverse and remand to the Court of Appeals to address the merits of the double jeopardy issue.

## I.   OVERVIEW

Defendant was charged by indictment with 46 sex crimes alleged to have been committed against the same person during an eight-year period. The counts alleging each type of crime were identical; they did not specify the incidents on which they were based. The case was tried to a jury. During the trial, the complainant testified and described some specific incidents. But the state did not link any of the specific incidents to any of the counts. The jury found defendant not guilty of 40 counts and guilty of six.

Defendant appealed his convictions, arguing that the trial court had committed an evidentiary error. The Court of Appeals agreed and reversed and remanded the case to the trial court. *State v. Dodge*, 297 Or App 30, 32, 46, 441 P3d 599, *rev den*, 365 Or 533 (2019).

On remand, defendant filed a motion to dismiss the indictment, asserting that retrying him on the six counts of conviction would violate his constitutional rights against double jeopardy. He contended that, because of the lack of specificity in both the indictment and the first trial, it was impossible to tell what incident each count in the indictment was based on, and, therefore, if he were retried on the six counts of conviction, he would be at risk of being convicted based on incidents "of which he [had] already been

_____

[1] Article I, section 12, of the Oregon Constitution provides, "No person shall be put in jeopardy twice for the same offence [*sic*][.]" The Fifth Amendment to the United States Constitution provides, "No person shall *** be subject for the same offence [*sic*] to be twice put in jeopardy of life or limb[.]" The Fifth Amendment's double jeopardy provision applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 US 784, 794, 89 S Ct 2056, 23 L Ed 2d 707 (1969).

acquitted." The trial court denied defendant's motion. The case proceeded to a second jury trial, at which the jury convicted defendant of the six remanded counts.

Defendant appealed again, this time assigning error to the trial court's denial of his motion to dismiss. He asserted that, because it was "unclear on what basis the jury reached its initial verdict," retrial on the counts of conviction put him "in jeopardy again for conviction on offenses of which he had already been acquitted." In doing so, defendant invoked the double jeopardy doctrine of "issue preclusion" for the principle that the state cannot retry "an issue that was decided against the state in a former trial, even if the former trial was not on the identical charge." (Internal quotation marks omitted.) Relying on that principle, defendant contended that, as a result of the state's failure in the first trial "to align the evidence with particular counts," it was "impossible to determine the basis for the [first] jury's verdicts." Therefore, he argued, his motion to dismiss should have been granted because retrial on the counts of conviction carried the risk that he would be convicted based on factual issues that "the jury in the first trial already rejected."

In response, the state argued, among other things, that defendant's trial and appellate arguments were different. According to the state, defendant's trial argument was a "successive prosecution" argument, whereas his appellate argument was an "issue preclusion" argument. Based on that perceived difference, the state argued that defendant had abandoned his trial argument and failed to preserve his appellate argument.

The Court of Appeals agreed with the state and resolved the case on preservation grounds. *Dodge*, 321 Or App at 776-77. We reverse. As we explain below, ever since the case was remanded to the trial court, defendant has raised the same issue; indeed, he has raised the same argument: that he is entitled to dismissal of the indictment on double jeopardy grounds because of the risk that, if he were retried on the six counts of conviction, he would be convicted based on incidents of which he was acquitted in the first trial. We remand the case to the Court of Appeals to address that argument.

## II.   PROCEDURAL FACTS

As mentioned, this case concerns two trials. We begin by describing the indictment and the state's evidence and arguments during the first trial. We then turn to defendant's first appeal, which resulted in the remand. Next, we recount the trial court proceedings on remand, focusing on the arguments that defendant made in support of his motion to dismiss on double jeopardy grounds, and the responses by the state and the trial court to those arguments. Finally, we review defendant's second appeal, examining the arguments defendant made in support of his assignment of error to the trial court's denial of his motion to dismiss, and the state's counterarguments.

A.   *Indictment*

A grand jury issued a 46-count indictment against defendant. The indictment was based on allegations that defendant had sexually abused his adoptive niece, DD, over a period of years. During most of that time, defendant and DD were living with defendant's mother, who is DD's adoptive grandmother.

The indictment charged defendant with multiple counts of each of the following crimes: second-degree rape (ORS 163.365), second-degree sodomy (ORS 163.395), second-degree unlawful sexual penetration (ORS 163.408), first-degree sexual abuse (ORS 163.427), and second-degree sexual abuse (ORS 163.425).

The counts did not describe the incidents on which they were based. Instead, as is common, the counts used the statutory definitions of the crimes that they alleged. If a definition included "sexual contact" as an element, the count alleged the form of contact. For example, five of the ten first-degree sexual abuse counts alleged that defendant had touched DD's genital area and the other five alleged that defendant had touched DD's breasts.

Each count in the indictment alleged that the crime it charged was committed during a "criminal episode separate, apart and distinct from that alleged in any other count" in the indictment. But the counts did not contain

any information from which the different criminal episodes could be identified. For example, the counts did not allege different dates or date ranges; instead, each count alleged that defendant committed the charged crime during the same eight-year period: "on or between November 20, 1999, to November 20, 2007."

Because of the generic way that the counts were worded, the indictment contained groups of identical charges. For example, each of the five counts that charged defendant with first-degree sexual abuse for touching DD's breasts alleged:

"The defendant, on or between November 20, 1999, to November 20, 2007, in Clackamas County, Oregon, in a criminal episode separate, apart and distinct from that alleged in any other count of this Indictment, did unlawfully and knowingly subject [DD,] a person under the age of 14 years, to sexual contact by touching her breast(s), a sexual or intimate part of [DD]."[2]

B.  *First Trial*

The case was tried to a jury. During the trial, the state did not attempt to link any of the counts to any specific incident. In his opening statement, the prosecutor did

_____

[2] Altogether, the indictment alleged the following groups of crimes:

• five counts of second-degree rape (Counts 1 - 5);

• five counts of second-degree sodomy (mouth to vagina) (Counts 11 - 15);

• five counts of second-degree sodomy (mouth to penis) (Counts 21 - 25);

• three counts of second-degree unlawful sexual penetration (Counts 31 - 33);

• five counts of first-degree sexual abuse (genital area) (Counts 37 - 41);

• five counts of first-degree sexual abuse (breasts) (Counts 42 - 46); and

• eighteen counts of second-degree sexual abuse, each group of which corresponded with the rape, sodomy, and unlawful sexual penetration counts that it followed in the indictment (Counts 6 - 10 (rape), Counts 16 - 20 (sodomy, first form), Counts 26 - 30 (sodomy, second form), and Counts 34 - 36 (unlawful sexual penetration)).

Although each count alleged that the crime it charged was committed during a criminal episode separate from that alleged in any other count, the prosecutor stated that the rape, sodomy, and unlawful sexual penetration counts had corresponding second-degree sexual abuse counts. That is consistent with the placement of, and allegations in, the second-degree sexual abuse counts. For example, Counts 6 - 10 followed the rape counts and alleged sexual intercourse. The prosecutor told the jury that the second-degree sexual abuse counts (which apply when a victim is under 18 years of age) were lesser-included offenses of the rape, sodomy, and unlawful sexual penetration counts (which apply when a victim is under 14 years of age).

not describe any specific incidents; instead, he simply stated that the different types of sexual contact had occurred a certain number of times, corresponding to the number of counts for each type of contact.

The state called DD as a witness. She testified about the number of times each of the charged crimes occurred. She also testified about several specific incidents, providing information about the location or other circumstances. For example, she testified that, on one occasion, she was playing video games with defendant and he tickled her and touched her breasts and vagina.

In his closing argument, the prosecutor did not link any of the counts to any specific incident. Instead, he told the jurors, "Really, you guys get to deliberate any way you want. What the State proposes is that you focus in on the act and figure out if it happened, how old [DD] was when it happened, and how many times it happened."

The jury instructions did not identify the incident on which each count was based, nor did they include a concurrence instruction. For each count, the verdict form identified only the count number, crime name, and form of sexual contact, as follows:

"We, the jury, being duly impaneled and sworn in the above-entitled court and cause, do find the defendant on count [number], the charge of [name of crime] ([form of contact]): * * *

"_____Not Guilty.

"_____Guilty."

The jury found defendant *not guilty* of 40 counts:

- all of the rape and sodomy counts and all of the corresponding second-degree sexual abuse counts (Counts 1 - 30);

- two of the three unlawful sexual penetration counts and the two corresponding second-degree sexual abuse counts (Counts 32, 33, 35 and 36);

- three of the five first-degree sexual abuse counts based on touching DD's vagina (Counts 39, 40, and 41); and

- three of the five first-degree sexual abuse counts based on touching DD's breasts (Counts 44, 45, and 46).

     The jury found defendant *guilty* of six counts:

- one of the unlawful sexual penetration counts and the corresponding second-degree sexual abuse count (Counts 31 and 34);

- two of the first-degree sexual abuse (genital area) counts (Counts 37 and 38); and

- two of the first-degree sexual abuse (breasts) counts (Counts 42 and 43).

     In sum, of the five counts alleging that defendant had touched DD's breasts, the jury found defendant not guilty of three counts and guilty of two; of the five counts alleging that defendant had touched DD's vagina, the jury found him not guilty of three counts and guilty of two; and of the three counts alleging unlawful sexual penetration, the jury found defendant not guilty of two counts and guilty of one. And the jury found defendant not guilty of all the other counts.

     At sentencing, the prosecutor argued that the trial court could impose consecutive sentences because the indictment alleged that each count was based on a separate criminal episode and because DD had testified to separate incidents. The trial court entered a judgment that acquitted defendant of 40 counts based on the jury's not guilty verdicts, merged the guilty verdict on Count 34 into that on Count 31, and convicted defendant of Counts 31, 37, 38, 42, and 43. The court imposed the statutorily mandated 75-month prison terms on each of those counts and ordered that defendant serve 45 months of the prison term on Count 42 consecutively to the other terms, for a total prison term of 120 months.

C.  *First Appeal*

     Defendant appealed, arguing, among other things, that the trial court had erred by admitting certain evidence. The Court of Appeals agreed with that argument, reversed defendant's convictions, and remanded the case to the trial court for further proceedings. *Dodge*, 297 Or App at 32, 46.

D.   *Second Trial*

When the case returned to the trial court on remand, the same prosecutor represented the state, but defendant was represented by different defense counsel because his prior counsel had passed away. Defendant's new defense counsel filed a motion to dismiss the indictment "on the grounds that it subjects [defendant] to double jeopardy in violation of the state and federal constitutions." In support of the motion, defense counsel attached a memorandum, asserting that, because the indictment did not identify the incidents on which each count was based, a second trial would subject defendant "to the risk of double jeopardy in violation of Article I, Section 12 of the Oregon Constitution and in violation of the Fifth and Fourteenth Amendments of the United States Constitution." Defense counsel pointed out that each count pending against defendant on remand was "*identical* to at least one count of which he has already been acquitted by the jury [in the first trial]." (Emphasis in original.) "For example," defense counsel explained:

> "[T]he jury acquitted defendant of Counts 32 and [33] [alleging unlawful sexual penetration], and defendant is now to be retried on the identically worded [Count] 31. *Because the counts in each set of charges are indistinguishable, for all anyone can tell, the conduct underlying the pending counts may be the very same conduct that underlies the counts of which he has already been acquitted by the jury.* In other words, defendant is now being retried for criminal conduct of which he may have already been acquitted. * * *
>
> "* * * * *
>
> "[Defendant] is exposed to the risk of double jeopardy at the moment the second trial begins because, according to the indictment, he is being charged with identical criminal conduct of which * * * the first jury may have already acquitted him."

(Emphasis added.)

In the memorandum, defense counsel also cited cases in which courts had held that indictments with "carbon copy" counts were not sufficiently specific to protect against double jeopardy, including *Valentine v. Konteh*, 395 F3d 626, 634 (6th Cir 2005) and *United States v. Panzavecchia*, 421

F2d 440, 442 (5th Cir 1970). In *Valentine*, a habeas corpus case, the defendant challenged the specificity of the indictment on which he was convicted. 395 F3d at 628. The federal district court granted the defendant relief and the appellate court affirmed, explaining that indictments must be specific enough so that a defendant can "plead convictions or acquittals as a bar to future prosecutions." *Id.* at 634. In other words, to protect against double jeopardy, "the defendant, the judge, and the jury must be able to tell one count from another." *Id.* at 637. In *Panzavecchia*, the defendant had filed a motion to dismiss his indictment before he was ever tried. 421 F2d at 441. The trial court denied the motion, but the appellate court later held that the trial court had erred. *Id.* at 441-42. Like the *Valentine* court, the *Panzavecchia* court explained that the indictment in that case posed a double jeopardy problem because it "fail[ed] to reveal which counts the Grand Jury intended to apply to which offenses [and] [c]onsequently any future pleas of former acquittal or conviction [were] imperiled." *Id.* at 442.

Defense counsel argued that defendant faced "an even greater exposure to double jeopardy than in *Valentine* and *Panzavecchia*," because, unlike the defendants in those cases, defendant was "facing a second trial, having already been acquitted at the first trial of multiple counts that are indistinguishable from the counts" that the state wanted to retry. Defense counsel explained that, among other things, the double jeopardy provisions protect against a second trial following an acquittal. (Citing *Arizona v. Washington*, 434 US 497, 503, 98 S Ct 824, 54 L Ed 2d 717 (1978) ("The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal.").) He argued that, because the jury in the first trial had acquitted him of 40 counts and each of the remanded counts was "*identical* to at least one count" that he had been acquitted of, there was a risk that he would be retried, in violation of his constitutional rights, based on conduct of which he had already been acquitted. (Emphasis in original.) In his conclusion, defense counsel summarized:

> "'When prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy.'

*Valentine*, 395 F3d at 636. [Defendant] ran the gauntlet once; the double jeopardy clause of the constitutions of Oregon and the United States protect him from having to do so again."

*See Green v. United States*, 355 US 184, 190, 78 S Ct 221, 2 L Ed 2d 199 (1957) (holding that, where the defendant was "forced to run the gauntlet once on [a] charge and the jury refused to convict him," he could not be retried on that charge).

The trial court held a hearing on defendant's motion to dismiss, and defense counsel again argued that, because defendant had been acquitted of 40 counts but "[w]e don't know which of those *** counts apply to which conduct," there was a risk that defendant would be tried for conduct he had already been acquitted of. Defense counsel contended:

"[Defendant] cannot be tried again for acts that he's been acquitted of. That's just a simple rule. ***

"This is are we just, very simply, trying him again for acts he was acquitted of? And the answer is maybe. We're not really sure, because of how the case was charged. It's that simple."

The prosecutor understood defense counsel's argument. He paraphrased it, stating that defense counsel was arguing that it was "impossible to determine what acts were the basis for [the] acquittal[s] in this case," and, therefore, defendant was at risk of double jeopardy.

The trial court also understood defense counsel's argument. It questioned the prosecutor about how the case had been tried. It pointed out that, "most times when these cases are tried," the state will link counts to specific incidents that can be differentiated from each other. It stated that specific "factual nexuses are assigned throughout the trial by function of the judge's comments or by functions of the prosecutor's choices or however it happens to certain counts, so it's abundantly clear which of the inciden[ts] relate to which of the counts." It asked the prosecutor whether that had happened in the first trial, and the prosecutor stated that it had not. Given that, the trial court repeatedly asked

the prosecutor to identify the incidents of which defendant had been acquitted:

- "I think we—he needs to know which of the crimes he was found not guilty of, because those crimes cannot be re-tried. So which of the counts has * * * he been acquitted of by the jury?"

- "I need to know what inciden[ts] he was found not guilty of, because he was found not guilty of a lot of the crimes. And he cannot be re-tried based on double jeopardy for things that he's been found not guilty of."

- "[H]ow do you know, based on what happened in the previous trial specifically, which of the crimes are connected to the guilty verdicts[?]"

The prosecutor acknowledged that, if it was unclear what incidents the jury's verdicts were based on, then "the State would be in trouble." But the prosecutor contended that DD had testified about "a certain number of things" and it was not "that many" and, therefore, it could be concluded that the specific acts that DD "testified to in detail were the ones that [defendant] was found guilty of."

The trial court pressed the prosecutor about that assertion:

"[W]hat I'm really not understanding is how with a 10-page grand jury indictment[,] the State can say with certainty that when there are five counts pled in succession that are pled identically, which of the five inciden[ts] that the State had alleged is the one that the jury found the Defendant not guilty of and which is the one that the jury found the Defendant guilty of?

"And I don't know how you make that jump without getting in the jury's mind unless it was abundantly clear during the trial that repeatedly the jury was told, * * * Counts 1, 5, 7, and 12 all relate to the exact same incident. That was the green couch incident.

"We think you should find—if you believe the named victim about the green couch incident, you need to find * * * the Defendant guilty of all five of these crimes because they're the green couch.

"Now we'll move on to Counts 2, 7—do you see what I'm saying?

"* * * * *

"Did that happen?"

The prosecutor said that he did not recall whether that had happened, but that, because DD testified to certain acts, it could be concluded that the jury had found defendant guilty of those acts. Defense counsel disagreed, asserting:

"The notion that [DD's] testimony was limited to say six specific acts and then everything else was ambiguous, and that's why he was only convicted of six specific acts is not supported by the transcript.

"I've read it. I wasn't the attorney of record, but I read the transcript a couple times. And that is not how the testimony came out. There were more specific [acts] and that is the problem."

Defense counsel argued that the state had not linked any of the counts to any specific incident, either in the indictment or in the first trial, and that the prosecutor could not do so on remand:

"And does [the prosecutor] even have the constitutional right to essentially insert himself as a grand jury and say, well, this act applied to this count[?]

"He doesn't, right? That's a grand jury function. That's not his function. He can't decide what acts apply to what count, especially not, you know, now retroactively, right?

"That was not information that was presented at the trial. We don't know what he was acquitted of. He was acquitted of many, many acts.

"And the jury may have disbelieved those specific acts he's talking about, but then they're being assigned to a particular count after the fact."

The trial court took the matter under advisement. It later issued a written order simply stating, "Defendant's Motion to Dismiss is denied."

The case proceeded to a second jury trial on the six remanded counts: Counts 31, 34, 37, 38, 42, and 43. The jury found defendant guilty of all the remanded counts.

E.  *Second Appeal*

Defendant appealed the trial court's judgment, assigning error to the court's denial of his motion to dismiss on double jeopardy grounds. Throughout his opening brief, defendant referenced his trial court argument. In the "Preservation of Error" section of his brief, which is five pages long, defendant quoted the argument that defense counsel had made in the trial court, the prosecutor's response, and the trial court's questions. He recounted that, in the trial court, defense counsel had argued that

> "the indictment should be dismissed because it presented a risk of reprosecution for crimes of which he had already been acquitted. He explained that the risk of a second prosecution for the same offense after an acquittal was created by the indictment's failure to differentiate among the original 46 counts charged and by trial testimony that was also undifferentiated and unaligned with specific counts[.]"

Similarly, in the "Summary of Argument" section of his brief, defendant asserted that he should not have been retried on the remanded counts because it was "unclear on what basis the jury reached its initial verdict," and, therefore, retrial put him "in jeopardy again for conviction on offenses of which he had already been acquitted." Likewise, in the "Argument" section of his brief, defendant contended that the trial court should have granted his motion to dismiss because of the possibility that the jury in the second trial would ground its verdict "on factual issues that the jury in the first trial already rejected."

To support his argument, defendant cited both the state and federal double jeopardy provisions. He also invoked "a component of the constitutional ban against double jeopardy": "issue preclusion." He contended that "the doctrine of issue preclusion forecloses the state 'from retrying an issue that was decided against the state in a former trial, even if the former trial was not on the identical charge.'" (Quoting *State v. Guyton*, 286 Or 815, 817, 596 P2d 569 (1979) (citing *Ashe v. Swenson*, 397 US 436, 90 S Ct 1189, 25 L Ed 2d 469 (1970) and *State v. Mozorosky*, 277 Or 493, 561 P2d 588 (1977)).) He cited state and federal cases for the proposition that the state may not relitigate factual issues that

have "already been decided in [a defendant's] favor," even "as
to different counts." (Citing *Guyton*, 286 Or at 818-19 and
*Yeager v. United States*, 557 US 110, 119-20, 129 S Ct 2360,
174 L Ed 2d 78 (2009).) He again relied on the principle that
the prohibition against double jeopardy "'surely protects a
man who has been acquitted from having to run the gaunt-
let a second time.'" (Quoting *Ashe*, 397 US at 445-46 (citing
*Green*, 355 US at 190).) Therefore, he contended, the state
could not hale a defendant before a second jury "to litigate
anew an issue that a prior jury had already decided in the
defendant's favor." (Citing *Ashe*, 397 US at 446.)

Defendant pointed out that, in the indictment,
"the counts were pleaded in statutory language only, and
undifferentiated by time or place." He also pointed out that,
during the first trial, the state "failed to link the counts with
discrete events" and that, as a result, the first jury's "verdict
was general, consistently with how the case was tried." That
was a problem, defendant contended, because, although it
was "clear that the jury did not believe most of DD's testi-
mony and found defendant not guilty of most of her allega-
tions," it was "unclear which events related at the first trial
the jury disbelieved." Because of that lack of clarity, defen-
dant further contended, the trial court should have granted
his motion to dismiss because of the risk that, during the
second trial, he would be convicted based on factual issues
that "the jury in the first trial already rejected."

In its answering brief in the Court of Appeals, the
state's primary argument was that defendant's trial argu-
ment differed from his appellate argument and that defen-
dant had abandoned his trial argument and failed to pre-
serve his appellate argument. The state did not dispute that,
in both the trial court and the appellate court, defendant
had argued that retrial of the remanded counts would vio-
late the state and federal constitutional prohibitions against
double jeopardy. But the state contended that, in the trial
court, defendant's trial argument was that retrial "violated
the prohibition against successive prosecutions for the same
offense after an acquittal," whereas his appellate argument
was that retrial "violated the issue-preclusion component of
constitutional double jeopardy protections." According to the

state, defendant's trial argument was a "successive prosecution" argument and his appellate argument was an "issue preclusion" argument.

The state's preservation argument was based on its characterizations of defendant's trial and appellate arguments, and those characterizations are apparent from the state's counterarguments. The state asserted that defendant could not prevail on a successive prosecution argument because, among other things, when a defendant's convictions are reversed and remanded on appeal, the state generally can retry those counts because the retrial is not a "successive prosecution," but rather a "continuing prosecution." (Citing *Price v. Georgia*, 398 US 323, 326-31, 90 S Ct 1757, 26 L Ed 2d 300 (1970).) Therefore, the state argued, because defendant had been convicted of Counts 31, 34, 37, 38, 42, and 43, he could be retried on those counts. Specifically, the state argued that the convictions on those counts "were overturned on appeal and thus did not bar retrial because there was continuing jeopardy until the proceedings ran their full course."

The state then asserted that defendant could not prevail on an issue preclusion argument because, among other things, the issue preclusion doctrine only applies when it is clear that, in resolving one charge, a factfinder found a fact that would preclude a conviction on another charge. In the state's view, defendant was arguing that the counts on which he was acquitted and the counts on which he was convicted had facts in common. In other words, as the state saw it, defendant was arguing that, in finding defendant not guilty of 40 counts, the first jury found that the state had failed to prove certain facts that were also necessary for convictions on the remaining six counts. Based on that assumption, the state asserted that defendant's appellate argument was unavailing because "[a]cquittals do not have preclusive effect on convictions that were rendered at the same time." (Citing *United States v. Powell*, 469 US 57, 105 S Ct 471, 83 L Ed 2d 461 (1984) for the proposition that "a defendant cannot meet his burden of proving that the jury necessarily decided an issue in his favor when the same jury returns irreconcilably inconsistent verdicts on the issue he seeks to shield from reconsideration.")

The Court of Appeals agreed with the state's preservation argument. *Dodge*, 321 Or App at 776-77. In a short opinion, the court stated that, in the trial court, defendant had argued that the indictment should be dismissed "because it presented a risk of reprosecution for crimes of which he had already been acquitted in violation of the protections in the state and federal constitutions against successive prosecutions," but that, on appeal, he was arguing that "the doctrine of issue preclusion prevented the state from retrying him and therefore the trial court should have granted his motion to dismiss." *Id.* at 776. As the state had urged, the court concluded that defendant had abandoned his trial theory and failed to preserve his appellate theory. *Id.* at 777. Therefore, the court affirmed the trial court's judgment. *Id.*

Defendant petitioned for review of the Court of Appeals opinion, and this court granted his petition.

### III.   ANALYSIS

On review, we must determine whether the Court of Appeals erred in holding that defendant failed to preserve the issue he raised on appeal. For the reasons explained below, we conclude that the Court of Appeals erred. Throughout this case—in both the trial court and the Court of Appeals—defendant has raised the same issue, indeed, the same double jeopardy argument. He has consistently argued that, because of the lack of specificity in both the indictment and the first trial, it is impossible to determine the factual basis for any count, and, therefore, when the case was remanded after the first appeal, there was a risk that, if he was retried, he would be convicted based on incidents of which he had already been acquitted.

We begin our analysis with a brief review of the preservation requirement. Generally, for an appellate court to address an issue, the issue must have been preserved; that is, it must have been raised in the trial court and on appeal. *State v. Link*, 367 Or 625, 637-38, 482 P3d 28 (2021); ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief

\* \* \*, provided that the appellate court may, in its discretion, consider a plain error."). Regarding the specificity required to preserve an issue, this court has "drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*." *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (emphasis in original). "The first ordinarily is essential, the second less so, the third least." *Id*. When determining whether a party raised the same issue in the trial court and on appeal, this court looks to the substance of the party's arguments. *State v. Weaver*, 367 Or 1, 18, 472 P3d 717 (2020) (holding that the defendant had preserved his appellate argument that his "compulsory process clause" rights were violated even though he had not used that term in the trial court).

In this case, to understand the parties' dispute regarding whether defendant raised a different double jeopardy issue in the trial court than in the Court of Appeals, it is helpful to review double jeopardy law. Defendant has invoked both the state and federal double jeopardy provisions. Or Const, Art I, § 12; US Const, Amend V.[3] The provisions "provide, in somewhat different terms," that a person "has a right not to be put in jeopardy twice for the same offense." *State v. Moore*, 361 Or 205, 212-13, 390 P3d 1010 (2017) (internal quotation marks omitted).[4] Among other

---

[3] Again, Article I, section 12, of the Oregon Constitution provides, "No person shall be put in jeopardy twice for the same offence [*sic*][.]" The Fifth Amendment to the United States Constitution provides, "No person shall \* \* \* be subject for the same offence [*sic*] to be twice put in jeopardy of life or limb[.]"

[4] Both Article I, section 12, and the Fifth Amendment limit the state's ability to prosecute a defendant multiple times for the "same offense." Or Const, Art I, § 12; US Const, Amend V. However, the meaning of "same offense" differs under the two provisions. Under Article I, section 12, charges are for the "same offense" if they (1) arise out of the same act or transaction, (2) can be brought in the same court, and (3) the prosecutor knows or reasonably should know about them at the time of the original prosecution. *State v. Brown*, 262 Or 442, 458, 497 P2d 1191 (1972). Under the Fifth Amendment, whether charges are for the "same offense" depends on the elements of each charge. *Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932). If all the elements of one are included in the elements of the other, the charges are for the "same offense." *Id*. Conversely, if each charge "requires proof of a fact which the other does not," the charges are not for the "same offense." *Id*. Thus, for the purposes of the Fifth Amendment, only lesser-included and greater-inclusive charges can be for the "same offense."

The different tests of "same offense" are not relevant to the issue in this case. That is because, under either test, if charges are based on the same incident of

things, the provisions limit the state's ability to prosecute a defendant multiple times based on the same "incident of conduct," that is, conduct—an act and accompanying mental state—that occurred at a particular time and location.[5] *See Mozorosky*, 277 Or at 497 (stating that, where the defendant had been found not guilty of one count of theft based on a specific incident, he could not be retried for the same crime based on the same incident); *McElrath v. Georgia*, 601 US 87, 89-90, 98, 144 S Ct 651, 217 L Ed 2d 419 (2024) (holding that, where the defendant had been acquitted of murder based on a specific incident, he could not be retried for that crime based on the same incident).

One of the purposes of the limit on multiple prosecutions for the same offense is to prevent the harassment of defendants. As this court has explained, Article I, section 12, protects individuals from "the harassment, embarrassment and risk of successive prosecutions for the same offense." *Moore*, 361 Or at 214 (internal quotation marks omitted).

---

conduct—that is, the same act and accompanying mental state occurring at a specific time and place—and are alleged to have violated the same statutory provision, the charges are for the "same offense." *Brown*, 262 Or at 458; *Blockburger*, 284 US at 304. Defendant's argument has been that he could not be retried because the first jury had concluded that the state had failed to prove that defendant had violated certain statutes by engaging in certain conduct, and there was a risk that the second jury would convict him of violating those same statutes based on that same conduct.

[5] We use the terms "incident of conduct" or simply "incident" to refer to conduct—that is, an act and accompanying mental state—engaged in at a particular time and location. *See* ORS 161.085 (defining "conduct," "act," and "culpable mental state"). In the trial court, the parties and the court described the issue using a variety of terms, including whether defendant could be tried for "conduct" he had already been acquitted of, as well as whether he could be tried for "incidents," "acts," "crimes," "counts," "things," and "stuff" he had already been acquitted of. They used those terms to refer to specific behavior at a specific time and place. We use the terms "incident of conduct" or "incident" to refer to that behavior.

We use those terms as opposed to "crime" because "crime" could be understood to refer to a statutory violation, as in the "crime" of first-degree sexual abuse, defined by ORS 163.427. Defendant has not argued that a person cannot be convicted multiple times for violating a statutory provision, *provided that the convictions are based on different incidents of conduct.*

In addition, we use the terms "incident of conduct" or "incident" instead of "offense," to differentiate defendant's double jeopardy argument from other types of double jeopardy arguments. Defendant has not argued, for example, that the offenses alleged in the counts of conviction were lesser-included or greater-inclusive versions of the offenses alleged in the counts of acquittal. Nor could he, given that each of the counts alleged that it arose out of a separate criminal episode than every other count.

Similarly, as the Supreme Court has explained, the Fifth Amendment's double jeopardy provision "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green*, 355 US at 187.

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Id.* at 187-88; *Currier v. Virginia*, 585 US 493, 498, 138 S Ct 2144, 201 L Ed 2d 650 (2018) (stating that the double jeopardy provision is based on a recognition of "the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek"). Thus, the double jeopardy provisions serve both to protect individuals and to help ensure fair trials and correct verdicts.

A second purpose of the limit on multiple prosecutions is "akin to that served by the doctrines of *res judicata* and collateral estoppel—to preserve the finality of judgments." *Crist v. Bretz*, 437 US 28, 33, 98 S Ct 2156, 57 L Ed 2d 24 (1978); *State v. Brown*, 262 Or 442, 449, 497 P2d 1191 (1972). Therefore, as we will explain in greater detail below, the general rule is that, if a defendant has been tried and either acquitted or convicted of an offense, he cannot be retried for the same offense. *State v. Boots*, 315 Or 572, 578, 848 P2d 76, *cert den*, 510 US 1013 (1993); *Brown v. Ohio*, 432 US 161, 165, 97 S Ct 2221, 53 L Ed 2d 187 (1977).

The double jeopardy provisions apply in a variety of scenarios, three of which are relevant in this case. First, the provisions prohibit reprosecution for offenses that a defendant has been *acquitted* of, even within a single case. Second, the provisions also prohibit reprosecution for offenses that a defendant has been *convicted* of, but with

some exceptions, including one that generally applies when a defendant appeals or otherwise challenges his convictions and secures a reversal and remand or other relief. Third, the federal provision includes an issue preclusion component that precludes the state from relitigating an issue that was decided against it in an earlier trial, even if the earlier trial was not on an identical charge. We now review those three scenarios.[6]

The first scenario is when a defendant has been acquitted of an offense. The double-jeopardy provisions prohibit reprosecution of an offense after an acquittal. *Mozorosky*, 277 Or at 499; *United States v. Ball*, 163 US 662, 669, 16 S Ct 1192, 41 L Ed 300 (1896). As the Supreme Court has explained, the principle that a verdict of acquittal cannot be reviewed is "'[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence.'" *McElrath*, 601 US at 94 (quoting *United States v. Martin Linen Supply Co.*, 430 US 564, 571, 97 S Ct 1349, 51 L Ed 2d 642 (1977)). An acquittal is "inviolate." *Id*. Its finality is "unassailable." *Yeager*, 557 US at 123.

For the purposes of the double jeopardy provisions, an acquittal is a determination by either a jury or judge that

---

[6] The three scenarios—each of which involves an initial trial that resulted in a verdict—are not the only ones where the double-jeopardy provisions apply. Not all trials result in verdicts. But, "[b]ecause jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's valued right to have his trial completed by a particular tribunal." *Washington*, 434 US at 503 (internal quotation marks omitted); *id*. at 503-04 (even if a first trial is not completed, a retrial "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted").

Sometimes a trial for an offense ends with a mistrial or dismissal. In some of those situations, the double jeopardy provisions will preclude a retrial; in others, they will not. Regarding mistrials, the general rule is that, if a trial results in a mistrial on an offense, the defendant can be retried for that offense, provided that the mistrial "was justified under the manifest necessity doctrine or was requested or consented to by the defense (absent judicial or prosecutorial overreaching that is aimed at forcing the mistrial)." Wayne R. LaFave, 6 *Criminal Procedure* § 25.1(g), 788 (4th ed 2015). Regarding dismissals, one general rule is that, if a trial results in the dismissal of an offense, the defendant can be retried for that offense if the dismissal was based "on some preliminary error that does not permanently terminate the prosecution, but allows the prosecution to reprosecute after curing the error (as where the dismissal was based on a defective pleading)." *Id*.

the state has failed to present sufficient evidence to support a conviction for an offense. *State v. Wolfs*, 312 Or 646, 653-54, 826 P2d 623 (1992); *Evans v. Michigan*, 568 US 313, 318, 133 S Ct 1069, 185 L Ed 2d 124 (2013). If such a determination is made, the defendant cannot be reprosecuted for the offense. *Mozorosky*, 277 Or at 499; *Ball*, 163 US at 669. That is true even if the acquittal was based on an error. *Evans*, 568 US at 320 ("[A]n acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was 'correct or not,' *Martin Linen*, 430 US at 571, and regardless of whether the court's decision flowed from an incorrect antecedent ruling of law."); *Fong Foo v. United States*, 369 US 141, 143, 82 S Ct 671, 7 L Ed 2d 629 (1962) (ruling that, if a defendant has been acquitted of an offense, he cannot be retried even if the acquittal was based on an "erroneous foundation").

The rule that a defendant cannot be reprosecuted for an offense following an acquittal applies not only to subsequent cases, but also within a single case. If, for example, a defendant is charged with two offenses and is acquitted of one and convicted of the other, he cannot be reprosecuted for the offense of which he was acquitted, even if he successfully appeals the offense he was convicted of and secures a remand and retrial on that offense. *Mozorosky*, 277 Or at 498; *Green*, 355 US at 193.

The second double jeopardy scenario that is relevant to this case is when a defendant has been convicted of an offense. As a general rule, convictions—like acquittals—are final. *Boots*, 315 Or at 578; *North Carolina v. Pearce*, 395 US 711, 717, 89 S Ct 2072, 23 L Ed 2d 656 (1969). If a defendant has been convicted of an offense, the state generally cannot reprosecute the defendant for the same offense. *Boots*, 315 Or at 578; *Pearce*, 395 US at 717. But there are exceptions to that rule. If a defendant appeals his conviction for an offense and secures a reversal, the state generally may reprosecute the defendant for that offense. *State v. Verdine*, 290 Or 553, 561, 624 P2d 580 (1981); *Lockhart v. Nelson*, 488 US 33, 38, 109 S Ct 285, 102 L Ed 2d 265 (1988). But, if the reversal is based on the ground that there was insufficient evidence to support a conviction, the state may not

reprosecute the defendant for that offense. *Verdine*, 290 Or at 558; *Burks v. United States*, 437 US 1, 10-11, 98 S Ct 2141, 57 L Ed 2d 1 (1978). Courts have offered different reasons for allowing retrials after a successful appeal or other challenge to a conviction. Oregon courts have sometimes said that reversal of a conviction "annuls" the original jeopardy. *E.g.*, *State v. Jones*, 240 Or 546, 548, 402 P2d 738 (1965); *State v. O'Donnell*, 192 Or App 234, 242, 85 P3d 323 (2004). The Supreme Court has said that, following a reversal and remand, jeopardy "continues." *Price*, 398 US at 329; *Breed v. Jones*, 421 US 519, 534, 95 S Ct 1779, 44 L Ed 2d 346 (1975) (observing that "'continuing jeopardy' *** has occasionally been used to explain why an accused who has secured the reversal of a conviction on appeal may be retried for the same offense").

The third double jeopardy scenario that is relevant to this case is when a defendant has been prosecuted for an offense and certain factual issues were resolved in the defendant's favor, as evidenced by the factfinder's verdict. When that occurs, the doctrine of "collateral estoppel," also called "issue preclusion," bars the state from relitigating the issues, even in connection with a different charge. *Ashe*, 397 US at 446 (holding that the federal double jeopardy provision includes a "collateral estoppel" component); *Yeager*, 557 US at 119 n 4 (noting that "the more descriptive term 'issue preclusion' is often used in lieu of 'collateral estoppel'")). In *Ashe*, the Court "squarely held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager*, 557 US at 119 (describing *Ashe*); *Currier*, 585 US at 514 ("Also shielded by the Double Jeopardy Clause is the issue-preclusive effect of an acquittal.").

The *Ashe* case arose out of an incident during which masked men broke into a home, robbed six poker players, and stole a car that belonged to one of the players. 397 US at 437. The state charged the defendant with seven offenses: armed robbery of each of the six poker players and theft of the car. *Id*. at 438. The state tried the charges separately, beginning with the charge of robbing one of the poker players, Knight. *Id.* During that trial, there was no dispute that

the poker players had been robbed; the issue was whether the defendant had been one of the robbers. *Id*. The state's evidence on that issue "was weak" and the jury found the defendant "'not guilty due to insufficient evidence.'" *Id*. at 438-39.

Six weeks later, the defendant was brought to trial for robbing another one of the poker players, Roberts. *Id*. at 439. Under federal law, that charge was a different "offense" for double jeopardy purposes than the charge that the defendant had been acquitted of because it had a different victim. *Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932). The defendant filed a motion to dismiss based on his former acquittal. *Ashe*, 397 US at 439. The trial court denied the motion, and the case proceeded to trial. *Id*. "The witnesses were for the most part the same, though this time their testimony was substantially stronger on the issue of the [defendant's] identity." *Id*. at 439-40. In addition, the state "further refined its case at the second trial by declining to call one of the participants in the poker game whose identification testimony at the first trial had been conspicuously negative." *Id*. at 440. The jury convicted the defendant. *Id*.

The defendant challenged his conviction, ultimately bringing a habeas corpus action in federal court that reached the Supreme Court, which held that the second trial had violated the Fifth Amendment's guarantee against double jeopardy. *Id*. at 445-46. The Court explained that, in the defendant's first trial, "[t]he single rationally conceivable issue in dispute before the jury was whether the [defendant] had been one of the robbers. And the jury by its verdict found that he had not." *Id*. at 445. Therefore, the Court concluded, the Fifth Amendment's guarantee against double jeopardy barred the state from litigating that fact again. *Id*. "For whatever else that constitutional guarantee may embrace, it surely protects a man who has been acquitted from having to 'run the gauntlet' a second time." *Id*. at 445-46 (quoting *Green*, 355 US at 190; citation omitted); *see also Mozorosky*, 277 Or at 498 (applying *Ashe*); *Yeager*, 557 US at 122 (holding that the issue preclusion doctrine can prevent retrial on counts on which the jury in the first trial was unable to reach a verdict).

This court followed *Ashe* in *Guyton*. In *Guyton*, the defendant was charged with driving under the influence of drugs (DUID) and reckless driving. 286 Or at 817. A jury acquitted the defendant of DUID but convicted him of reckless driving. *Id*. Thereafter, the defendant successfully appealed the reckless driving conviction and secured a remand. *Id*. On remand, he filed a motion to exclude evidence of his possession of a partially smoked marijuana cigarette, arguing that his acquittal on the DUID charge "foreclosed retrial of the issue whether he was affected by marijuana when he drove in the allegedly reckless manner." *Id*. The trial court denied the motion, and the defendant was retried and found guilty of the reckless driving charge. *Id*. He appealed again and the Court of Appeals reversed, citing *Ashe*. *Id*. On review, this court affirmed the Court of Appeals' decision, holding that, under *Ashe*, "it is one application of the constitutional guarantee against double jeopardy that the state is collaterally estopped from retrying an issue that was decided against the state in a former trial, even if the former trial was not on the identical charge." *Id*. This court explained that, although there "were no grounds to bar the renewed prosecution on the reckless driving charge" because the defendant himself had appealed his conviction of that charge, "[w]hat could no longer be an issue in that prosecution was whether [the] defendant's driving perhaps was affected by his having recently smoked marijuana. His acquittal on the DUID charge determined that this was not the case." *Id*. at 818. After the determination of that issue for the defendant, "the evidence was no longer relevant to any issue in the reckless driving prosecution." *Id*.

This case involves some aspects of each of the three scenarios described above. In the first trial, defendant was acquitted of some counts; he was convicted of others; and, in acquitting him, the jury necessarily resolved some factual issues in his favor. We understand defendant to have taken the position, starting with the remand after his first appeal, that, because of the way this case was charged and litigated in the first trial, it is impossible to identify the incidents of conduct underlying the acquittals and convictions and, relatedly, the facts the jury resolved in defendant's favor. As such, this case presents an issue of first impression. Neither

this court nor the Supreme Court has addressed how the double jeopardy provisions apply when the state charges a defendant with identically worded counts, fails to link the counts to specific instances of conduct and the defendant is acquitted of some counts and convicted of others. In a case where the state explicitly identifies the factual bases for the charges that it brings against a defendant, either in the indictment or at trial, it is ordinarily easy to distinguish between counts of conviction and acquittal. But that did not happen here. Because the issue in this case differs from past cases, the labels used in those cases do not fit perfectly here.

Defendant's arguments have been based on his acquittals. He has sought to protect those acquittals and prevent the state from relitigating the factual issues underlying them. But because of the non-specific manner in which the counts were charged and litigated during the first trial, defendant's position is that he cannot identify the incidents of conduct underlying the counts. If it were clear, for example, that the incident underlying Count 44, of which defendant was acquitted, was that defendant had touched DD's breasts while they were playing video games, then defendant could not be reprosecuted based on that touching. We do not understand the state to argue otherwise. The problem here, according to defendant, is that one cannot know which set of facts the jury attached to any particular count, and, therefore, there is an inherent risk that, at the second trial, defendant would be convicted based on incidents of which he had been acquitted in the first trial. Defendant's concern has been, essentially, that the state had litigated the case in a way that denied him the protection of his acquittals in violation of his rights under the double jeopardy provisions.

While defendant has relied on his acquittals, the state has relied on his convictions. The state has argued that defendant could be reprosecuted on the counts of conviction because he successfully appealed them and, as a general rule, a defendant can be reprosecuted for counts of conviction that are reversed and remanded.

But this is not a case that can be resolved simply by looking at the count numbers. Defendant cannot, and does not, argue that he was acquitted of Counts 31, 34, 37, 38, 42,

and 43 in the first trial. He was convicted of those counts, and he has not disputed that fact. Nor has he disputed that, generally, when a defendant appeals a count of conviction and secures a reversal and remand, the defendant can be retried on that count. Defendant's argument throughout has been that, because of the lack of specificity in the indictment and the first trial, there is a risk that the jury in the second trial would convict him of incidents of which the jury in the first trial had acquitted him.

The state acknowledges that defendant made that argument in the trial court. The state labels that argument as a "successive prosecution" argument. That label is correct, in the sense that defendant is arguing that he was acquitted of certain counts and reprosecution of counts of acquittal constitutes a "successive prosecution" and is barred by the double jeopardy provisions. In response to that argument, the state says that defendant could be reprosecuted for Counts 31, 34, 37, 38, 42, and 43 because he was convicted of those counts. It argues that the reprosecution is not a "successive prosecution" but instead is a "continuing prosecution." But that argument is not responsive to defendant's argument: that there was a risk that, in the second trial, he would be convicted based on incidents of conduct of which he had already been acquitted.

That risk is similar to the risk addressed in issue preclusion cases: that the defendant would be convicted based on factual issues that had already been resolved in his favor in connection with a different count. Consequently, it is understandable that defendant invoked the issue preclusion component of the double jeopardy provisions to support his argument when the case reached the Court of Appeals. In doing so, he relied on the principle underlying the issue preclusion cases. He asserted that the doctrine "forecloses the state 'from retrying an issue that was decided against the state in a former trial, even if the former trial was not on the identical charge.'" (Quoting *Guyton*, 286 Or at 817.)

In invoking issue preclusion, defendant anticipated the state's argument that he could be reprosecuted for Counts 31, 34, 37, 38, 42, and 43 because he had been convicted of those counts. Defendant used the issue preclusion cases

to argue that, even though he had been convicted of those counts, he could not be reprosecuted for them because "factual issues in those counts may have already been decided against the state in the first trial."

As defendant acknowledged both in the Court of Appeals and in this court, the issue preclusion doctrine is generally used when two counts overlap; that is, when the state's factual basis for one count has a fact in common with the state's factual basis for another count. But that was not how defendant was using the issue preclusion doctrine. His argument was not based on the existence of overlapping factual bases. He was not arguing, for example, that in acquitting him of Count X, the first jury necessarily rejected a factual claim that the second jury would have to accept to convict him of Count Y. Instead, his argument was based on the possibility of substituted factual bases. His argument was that it was possible that, in acquitting him of a count, the first jury had rejected the state's allegation based on one incident of conduct, but that the state would rely on the same incident to get the second jury to convict him of a different count. For example, it was possible that the first jury had acquitted defendant of Count X, based on its conclusion that the state had failed to prove that defendant had touched DD's breasts while they were playing video games, but that, on remand, the state would use that same touching as the basis for Count Y. In other words, we understand defendant to have relied on the issue preclusion doctrine to explain why his acquittals could protect him against retrial on other counts: because the state could not essentially swap the factual basis for one count to another. That is, the state could not use the same incident of conduct as a basis for two different counts alleging the same statutory violation.

To be sure, the label "issue preclusion" is not a perfect fit for the argument that defendant was making. Generally, to prevail on an issue preclusion argument, a party must be able to show that a factual issue has been resolved in its favor. But that has never been defendant's claim. His claim has been that, because of the way the state chose to prosecute him, it is impossible for anyone to tell what facts the first jury decided. In the trial court, defendant argued

that, because he had been acquitted of 40 counts but "we don't know which of those *** counts apply to which conduct," there was a risk that he would be tried for conduct he had already been acquitted of. And, in his Court of Appeals brief, defendant stated that the state could not reprosecute him on the remanded counts because it was "unclear on what basis the jury reached its initial verdict," and, therefore, a second trial put him "in jeopardy again for conviction on offenses of which he had already been acquitted." Thus, defendant's argument on appeal was substantively the same as his argument in the trial court, regardless of whether the label "issue preclusion" usefully describes that argument. So, to the extent the state's preservation argument is that, in the Court of Appeals, defendant raised a new and different argument by invoking the issue preclusion doctrine and making an argument that depended on his ability to identify the facts that were resolved in his favor, the state's argument is based on a misunderstanding of the concern that defendant has raised since the case was remanded after the first appeal. Defendant's consistent complaint has been that he cannot identify those facts because of the way the case was charged and tried.

Based on our review of double jeopardy law and the parties' arguments in both the trial court and the Court of Appeals, we conclude that the Court of Appeals erred in rejecting defendant's appellate argument on preservation grounds. Defendant has raised the same issue—indeed, the same argument—since the case was remanded after the first appeal.

As recounted above, after the case was remanded and was back in the trial court, defendant moved to dismiss the indictment on the ground that there was a risk that he could be convicted based on incidents of which the first jury had acquitted him. He identified why that risk existed: because of the way the case was charged and tried. He identified the question before the court, stating, "This is are we just, very simply, trying him again for acts he was acquitted of? And the answer is maybe. We're not really sure, because of how the case was charged. It's that simple."

Defendant also identified the source of his argument: the state and federal prohibitions against double jeopardy. He explained that he already "ran the gauntlet" and should not be required to do so a second time. The prosecutor understood defendant's argument; he paraphrased it, stating that defendant was arguing that it was "impossible to determine what acts were the basis for [the] acquittal[s] in this case," and, therefore, defendant was at risk of double jeopardy. The trial court also understood defendant's argument, telling the prosecutor,

"I need to know what inciden[ts] he was found not guilty of, because he was found not guilty of a lot of the crimes. And he cannot be re-tried based on double jeopardy for the things he's been found not guilty of."

Defendant made the same argument on appeal. As described above, in his Court of Appeals brief, defendant set out the trial court proceedings in great detail in his preservation of error section, indicating that he was making the same argument that he had made below. He identified the same facts about how the case was charged and tried, he described the same problem that was created as a result of those facts, and he invoked the same constitutional provisions. He argued that it was "unclear on what basis the jury reached its initial verdict," and, therefore, retrial put him "in jeopardy again for conviction on offenses of which he had already been acquitted." He also argued that retrial put him at risk of being convicted based "on factual issues that the jury in the first trial already rejected."

Thus, defendant's claim in both the trial court and the Court of Appeals was that, due to the way the case was charged and tried, it was impossible to tell which incidents he had been acquitted of and which incidents he had been convicted of, and, therefore, there was a risk that, in the second trial, the state would present, and the second jury would convict him of, incidents of conduct of which the first jury had acquitted him.

Having concluded that the Court of Appeals erred in resolving this case on preservation grounds, we remand the case to that court. Although in some cases where we conclude that the Court of Appeals erred in holding that an

issue was unpreserved we proceed to address the merits of the issue, we decline to do so here. Our discussion of how the issue in this case differs from the issues in prior cases may enable the parties to address the novel and important issues in this case more directly. As discussed, the issue in this case is not easily labeled. It differs from the "former acquittal," "continuing prosecution," and "issue preclusion" cases decided by this court and the Supreme Court. On remand, the parties can focus on the principles underlying the double jeopardy provisions and address how those principles apply to the scenario here, where the state did not link any of the counts in the indictment to any specific incident of conduct.[7]

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

**BUSHONG, J.,** concurring.

The majority opinion concludes that the Court of Appeals erred in declining to address, on preservation grounds, the merits of defendant's double jeopardy challenge to his convictions. I agree that the issue was adequately preserved for review. Having resolved the preservation issue, this court had two options: It could decide the double jeopardy

---

[7] The concurrence takes issue with our description of the parties' arguments. ___Or at ___ (Bushong, J., concurring) (slip op at 3:6-11). We describe those arguments because the state argued, and the Court of Appeals held, that defendant made different arguments in the trial court and the Court of Appeals. Given that holding, the nature of defendant's arguments and the state's characterization of them are central to the question presented on review. As we explain above, the state's characterization of defendant's arguments is apparent from the state's counterarguments, which is why we describe those counterarguments. ___ Or at ___ (slip op at 16:19-21).

The concurrence also takes issue with the fact that we describe double jeopardy law. ___Or at ___ (Bushong, J., concurring) (slip op at 3:11-14). We do so to provide context to the question presented and to explain why that question is one of first impression. The description is not *dictum*; it is necessary to address the state's characterization of defendant's arguments. It shows the source of the labels that the state has used and why those labels do not fit.

Finally, the concurrence objects to our use of "incidents of conduct." ___ Or at ___ (Bushong, J., concurring) (slip op at 3:14-19). We use that term to be clear about the nature of defendant's argument: that the state cannot retry him for the very same crime (meaning statutory violation) based on the very same conduct (meaning a single incident, not a separate one). It is a term that is intended to properly focus the parties and the Court of Appeals on the argument that defendant has made throughout this case.

issue, or it could remand to give the Court of Appeals the opportunity to decide it in the first instance. The majority chooses the second option, but much of the opinion proceeds to discuss the merits of defendant's claim, the state's arguments in response, and principles of "double jeopardy law." __ Or __ (slip op at 19:16 - 34:4). I write separately to emphasize that most of that discussion is *dicta* that does not bind and should not influence the Court of Appeals when it decides the double jeopardy issue in the first instance.

As the majority opinion points out, the 46-count indictment charged defendant with, among other things, five counts of first-degree sexual abuse for touching the child victim's breasts on five separate occasions; five counts of first-degree sexual abuse for touching the victim's genitals on five separate occasions; and three counts of second-degree unlawful sexual penetration, with corresponding counts for second-degree sexual abuse. The jury in the first trial found defendant guilty of touching the victim's breasts on two separate occasions (not five as charged); guilty of touching the victim's genitals on two separate occasions (not five as charged); and guilty of sexual penetration and sexual abuse on one occasion (not three as charged). Those convictions were reversed by the Court of Appeals based on an evidentiary error, and the case was remanded for a new trial.

On remand, defendant contended that double jeopardy barred the state from retrying the six counts on which defendant had been convicted in the first trial. The trial court disagreed, defendant was re-tried on those counts, and the jury again found him guilty on all six counts. Thus, two separate juries have unanimously concluded beyond a reasonable doubt that defendant touched the child victim's breasts on two separate occasions; touched her genitals on two separate occasions; and sexually penetrated her on one occasion. On remand from this court, the Court of Appeals must decide whether the double jeopardy clauses in the state and federal constitutions—both of which preclude the state from putting a person in jeopardy twice for the "same offense"—barred a retrial after the original convictions on those six charges were reversed based on an evidentiary error during the first trial.

As the majority opinion points out, double jeopardy ordinarily would not preclude a retrial on remand after a conviction is reversed for evidentiary error. But in this case, the issue is complicated by the acquittals on most of the charges and the fact that, in the original trial, the state and the jury focused on the *number of instances* of sexual abuse and the *nature of the acts* without specifying the times, places, or other circumstances that would differentiate one instance from another. Whether that means that a retrial following remand is barred by double jeopardy presents an issue of first impression, as the majority opinion concludes. Although the parties briefed that issue in the Court of Appeals, their briefing in this court only addressed preservation because that was the sole basis for the Court of Appeals' decision. I agree with the majority that this court could benefit from the Court of Appeals' analysis of the merits of defendant's double jeopardy claim before we attempt to decide that issue.

Accordingly, I agree with the majority's disposition: remand to the Court of Appeals to address the merits in the first instance. But the majority opinion does not just decide that the issue was adequately preserved and remand the case to the Court of Appeals. Instead, it describes in detail the merits of defendant's double jeopardy claim—and the state's arguments in response to that claim—without deciding the issue.

Granted, *some* discussion of defendant's double jeopardy claim was necessary to explain why that claim had been adequately preserved for appellate review. But in describing the parties' arguments, the majority opinion goes further than necessary to decide the preservation issue. In addition, the majority opinion discusses in detail principles of "double jeopardy law" as developed in prior cases of this court and the United States Supreme Court, __ Or at __ (slip op at 19:16 - 29:8), even though none of those cases resolves the issue presented here. It suggests that a phrase—"incidents of conduct"—may be useful in analyzing the double jeopardy issue, citing two cases—*State v. Mozorosky*, 277 Or 493, 497, 561 P2d 588 (1977), and *McElrath v. Georgia*, 601 US 87, 89-90, 98, 144 S Ct 651, 217 L Ed 2d 419 (2024). __

Or at __ (slip op at 20:3 - 21:6). But neither case used "incidents of conduct" to analyze and decide the double jeopardy issues presented in those cases, and they are factually different from this case.[8] And the majority opinion appears to reject the state's argument that double jeopardy does not bar a "continuing prosecution" of the six counts at issue on remand because, according to the majority opinion, that argument "is not responsive" to the double jeopardy concern that defendant has identified. __ Or at __ (slip op at 31:10-16).

The issue presented here—whether the double jeopardy provisions of Article I, section 12 of the Oregon Constitution and the Fifth Amendment to the United States Constitution barred a retrial on remand under the circumstances of this case—is an issue of first impression in Oregon, as the majority opinion points out. Both of those constitutional provisions preclude the state from prosecuting a defendant twice "for the same offense." Or Const, Art I, § 12; US Const, Amend V. Whether the prosecution in this case violated those provisions will require the Court of Appeals on remand to first interpret the state constitutional provision, applying our traditional methodology. *See State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011) (stating that "[w]e examine the text in its context, the historical circumstances of the adoption of the provision, and the case law

---

[8] The defendant in *Mozorosky* was charged with eight counts of theft based on "several schemes [that the defendant used] to defraud his employer." 277 Or at 495. A jury acquitted him on two counts and was unable to agree on a verdict on the remaining six. The trial court and Court of Appeals concluded that a retrial on those six charges was barred by double jeopardy, but this court reversed, concluding that a retrial was not barred by double jeopardy because the jury, "acting rationally, could have acquitted the defendant" on two charges "upon an issue other than that which the defendant seeks to foreclose from consideration" on retrial. 277 Or at 500. While *Mozorosky*'s analysis might be instructive in deciding the double jeopardy issue presented in this case, the "incidents of conduct" terminology was not used in the court's analysis in that case.

The defendant in *McElrath* killed his mother. A Georgia jury found him not guilty of murder with malice by reason of insanity, and "guilty but mentally ill" on counts of felony murder and aggravated assault. 601 US at 91. The Georgia Supreme Court concluded that those verdicts were inconsistent and remanded for a new trial. The Supreme Court reversed, holding that the jury's "'not guilty by reason of insanity'" verdict "constituted an acquittal for double jeopardy purposes" that precluded a retrial. *Id.* at 89-90. Because that case involved only one incident—defendant's act in killing his mother—the Court did not address how multiple "incidents of conduct" might affect the double jeopardy analysis.

that has construed it" in an effort to "identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances").

That analysis should not be affected by the majority opinion's description of the relative merits of the parties' arguments, __ Or at __ (slip op at 29:9 - 34:4), its general discussion of principles of "double jeopardy law," *id.* at __ (slip op at 19:16 - 29:8), or its suggestion that analyzing the "incidents of conduct" might be useful in deciding the constitutional question, *id.* at __ n 5 (slip op at 21 n 5). Those aspects of the majority opinion go well beyond deciding that defendant's double jeopardy claim was adequately preserved for appellate review.

Because those parts of the majority opinion were not necessary to the outcome of the case in this court, they are *dicta*. *See Halperin v. Pitts*, 352 Or 482, 492, 287 P3d 1069 (2012) ("In judicial opinions, [*dictum*] commonly refers to a statement that is not necessary to the decision."); *State ex rel Huddleston v. Sawyer*, 324 Or 597, 621 n 19, 932 P2d 1145 (1997) ("[T]hat statement is *dictum*, because it was not necessary to the outcome of the case."); *State v. Smith*, 301 Or 681, 696 n 10, 725 P2d 894 (1986) ("[T]he statement is not necessary to the decision in the case and is *dictum*."). On remand, the Court of Appeals is not bound—and should not be influenced—by the *dicta* in the majority opinion in deciding this important issue of first impression.